UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD SKRZYSOWKSI,                    :
                                       :CIVIL ACTION NO. 3:11-CV-1384
        Plaintiff,                     :
                                       :(JUDGE RICHARD P. CONABOY)
        v.                             :
                                       :
VERSACOLD LOGISTICS SERVICES,          :
INC., VERSACOLD LOGISTICS              :
SERVICES, LLC AND AMERICOLD            :
LOGISTICS, LLC t/d/b/a AMERICOLD       :
REALTY TRUST,                          :
                                       :
        Defendants.                    :
                                       :

---

**MEMORANDUM**

Here we consider Defendant's Motion for Summary Judgment (Doc.
27) filed on November 12, 2012, and accompanied by the Statement of
Undisputed Material Facts in Support of Defendant's Motion for
Summary Judgment (Doc. 28) and Defendant's Brief in Support of
Motion for Summary Judgment (Doc. 29).  On December 18, 2012,
Plaintiff filed Plaintiff's Response to Defendant's Statement of
Material Facts in Support of Motion for Summary Judgment and
Counterstatement of Facts (Doc. 32) and Plaintiff's Brief in
Opposition to Defendant's Motion for Summary Judgment (Doc. 33).
Defendant sought and was granted an extension of time to file its
reply brief (Docs. 34, 35) and filed the brief on January 11, 2013
(Doc. 36).  Therefore, this matter is fully briefed and ripe for
disposition.  After a thorough review of the parties' filings, we
conclude summary judgment is not appropriate.

# I. Background[1]

Plaintiff began working at VersaCold as a Warehouse Supervisor at its Gouldsboro, Pennsylvania, facility in October 2006.[2] (Doc. 28 ¶ 6; Doc. 32 ¶ 6.) He was fifty-five years old at the time. (Doc. 28 ¶ 7; Doc. 32 ¶ 7.) In this position, Plaintiff was responsible primarily for managing a team of employees with reference to shipping and receiving frozen food products. (Doc. 28 ¶ 8; Doc. 32 ¶ 8.) He reported to Justo Benavides, Operations Manager, who in turn reported to Robert Pavlasky, General Manager of the Gouldsboro facility. (Doc. 28 ¶ 9; Doc. 32 ¶ 9.) As the General Manager, Pavlasky approved the decision to hire Plaintiff. (Doc. 28 ¶ 10; Doc. 32 ¶ 10.)

In July 2008, Pavlasky promoted Plaintiff to a Shift Manager position. (Doc. 28 ¶ 11; Doc. 32 ¶ 11.) In this position, Plaintiff continued to report to Benavides and was responsible for the following: preparing operations schedules and coordinating activities; recruiting, hiring, training and coaching supervisor-

---

[1] We agree with Defendant's assessment of the relevance of *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), at this stage of the proceedings. (*See* Doc. 36 at 7-11.) We further note that this Court's analysis of the pending motion does not hinge on disputed responses. Therefore, any notation that Plaintiff deems a statement of fact "immaterial" is for informational purposes only.

[2] In December 2010, AmeriCold acquired VersaCold's warehouses and operations, including the Gouldsboro, Pennsylvania, location. (Doc. 28 ¶ 5: Doc. 32 ¶ 5.) VersaCold and AmeriCold provide temperature controlled warehousing and distribution services. (Doc. 28 ¶¶ 1, 5; Doc. 32 ¶¶ 1, 5.)

level team members; monitoring shift productivity; ensuring that supervisors are meeting Company standards and guidelines as well as all federal, state and local laws and regulations; and collaborating with other Shift Managers to control and improve the overall operation. (Doc. 28 ¶¶ 12, 13; Doc. 32 ¶¶ 12, 13.) Plaintiff held the Shift Manager position working first shift from July 2007 until May 2009. (Doc. 28 ¶ 14; Doc. 32 ¶ 14.) As part of a reorganization, Plaintiff was transferred to the second shift in May 2009 and remained in that position until November 9, 2009. (Doc. 28 ¶ 15; Doc. 32 ¶ 15.) As of November 1, 2009, there were four shifts at the Gouldsboro facility: first shift from approximately 6:00 a.m. to 1:30 p.m.; second shift from approximately 1:30 p.m. to 11:30 p.m.; third shift from approximately 11:00 p.m. to 7:00 a.m.; and a weekend shift. (Doc. 28 at 4 n.8.)

Defendant asserts that Plaintiff does not believe his move to the second shift was discriminatory, nor does he believe he was discriminated against during his employment as a Warehouse Supervisor or Shift Manager. (Doc. 28 ¶¶ 17, 18.) Plaintiff states that he does not believe the shift transfer was discriminatory but he believes his termination was because of his age. (Doc. 32 ¶¶ 17, 18.)

Beginning in 2008, VersaCold evaluated the performance and competencies of the Shift Managers. (Doc. 28 ¶ 19; Doc. 32 ¶ 19.)

Benavides evaluated each shift manager, and the process included the opportunity for each Shift Manager to select various "direct reports" and "team/peers" to provide ratings and comments.[3]  (Doc. 28 ¶ 21; Doc. 32 ¶ 21.)  The scores on the evaluation process (called the "360 process") ranged from "1" to "4," with "4" as the highest score a Shift Manager could receive.  (Doc. 28 ¶ 26; Doc. 32 ¶ 26.)

In 2008, Plaintiff's Overall Performance Rating was 2.93. (Doc. 28 ¶ 29; Doc. 32 ¶ 29.)  On February 28, 2009, Plaintiff acknowledged that he reviewed his performance evaluation and discussed it with Benavides.  (Doc. 28 ¶ 30; Doc. 32 ¶ 30.) Plaintiff does not dispute his Overall Performance Rating or any of the specific scores given to him on his 2008 evaluation, nor does he believe that his 2008 performance evaluation was unfair or discriminatory.  (Doc. 28 ¶¶ 31-32; Doc. 32 ¶¶ 31-32.)

David Pinto ("Pinto") and Eugene Louriero ("Louriero") were the other Shift Managers at the Gouldsboro facility in 2008.  (Doc. 28 ¶ 33; Doc. 32 ¶ 33.)  Pinto's Overall Performance Rating was 3.04, and Louriero's 2008 Overall Performance Rating was 3.33. (Doc. 28 ¶ 35; Doc. 32 ¶ 35.)

During a weekly conference call in the fall of 2009, VersaCold Divisional Vice President Richard Kappmeier ("Kappmeier")

---

[3]  "Direct reports" were those individuals who reported directly to the Shift Manager; "team/peers" were defined as any VersaCold employee.  (Doc. 28 at 6 nn.10-11.)

instructed various VersaCold General Managers, including Pavlasky, to attempt to reduce headcount at their facilities in an effort to cut costs. (Doc. 28 ¶ 36; Doc. 32 ¶ 36.) Pavlasky met with his direct reports to identify positions at the Gouldsboro facility that could be eliminated. (Doc. 28 ¶ 37; Doc. 32 ¶ 37.) After consultation, the group agreed to propose to Kappemeir that VersaCold eliminate one Inventory Control Clerk position, one Warehouse Supervisor position, and one Shift Manager position. (Doc. 28 ¶¶ 38-39, 41; Doc. 32 ¶¶ 38-39, 41.)

As of November 2009, the four Shift Managers at the Gouldsboro facility were Plaintiff, Pinto, Louriero, and Robert Krawiec ("Krawiec").[4] (Doc. 28 ¶ 40; Doc. 32 ¶ 40.) Pavlasky determined who to select for layoff in these positions. (Doc. 28 ¶ 42; Doc. 32 ¶ 42.) Pavlasky reportedly decided to eliminate the Shift Manager who had the lowest Overall Performance Rating in the 2008 evaluation process. (Doc. 28 ¶ 43.)

Reporting that the decision was not an easy one because all the Shift Managers were relatively good performers, Defendant states that Pavlasky selected Plaintiff as the Shift Manager to be laid off after he went to the Human Resources office and asked Human Resources Manager Bertha Maya for copies of the 2008 ratings

---

[4] Kraweic had not received a performance evaluation in 2008 because he was not employed in the Shift Manager position at the time the evaluations were completed. (Doc. 28 at 10 n.18.) Defendant asserts that Plaintiff does not dispute VersaCold's decision to not select Krawiac for layoff. (*Id.*)

and found that Plaintiff had the lowest score.[5] (Doc. 28 ¶¶ 44-48.) Plaintiff refutes Defendant's portrayal, asserting that Pinto's "deleterious conduct" was notorious and well known to management, including Benavides. (Doc. 32 ¶ 45.) Plaintiff also questions the reliability of the reported scores. (Doc. 32 ¶ 47.) Plaintiff disputes that he was selected for layoff based on his performance evaluation. (Doc. 32 ¶ 48.) Rather, he asserts that the reasons stated by Defendant were pretextual and he was selected for layoff because of his age. (*Id.*)

Plaintiff provides several reasons why the stated reasons were pretextual, including the following: 1) Benavides admitted he did not look at the 360 degree feedback result summary when making his recommendation to discharge Plaintiff; 2) Defendant did not follow its own procedures in its use of the 360 degree procedure; 3) Pinto's record of performance, conduct, and behavior were so reprehensible that "it is utterly implausible" that Defendant would base its selection decision on the 360 degree feedback result summary; 4) Plaintiff was twenty-seven years older that Pinto; and 5) Defendant asserted to the EEOC that Pinto's earlier hire date was a factor in its selection of Plaintiff for termination, but that reason was never asserted by Benavides or Pavlasky and, in

---

[5] In the margin Defendant notes that Pavlasky also reported that, as part of the process, he noted that Plaintiff was the least equipped of all the Shift Managers to effectively address the needs of and problems facing the Gouldsboro facility and Benavides recommended Plaintiff for layoff. (Doc. 28 at 10 n.19.)

fact, Plaintiff was more senior.  (*Id.*)

Cited examples of Pinto's negative record include: 1) notations in his 360 degree feedback result summary indicating incidents of unprofessional conduct, the need to change his behavior and the way he treats people, his showing of disrespect to a number of people and his loss of respect among co-managers and some senior managers (Doc. 32 ¶ 48(c)(1)-(2)); 2) a May 2, 2008, note placed by Maya in Pinto's personnel file documenting that Pavlasky and Benavides were made aware that on April 30, 2008, four employees had reported to management inappropriate behavior on the part of Pinto in two separate incidents and that Pinto had many negative encounters regarding his attitude, dealing with other employees, and occasions where he made decisions without consulting appropriate parties (Doc. 32 ¶ 48(c)(3)); 3) on May 15, 2009, Maya placed a note in Pinto's personnel file documenting that she and Benavides met with Pinto that day to discuss with him the topic of using inappropriate language and being unprofessional and that they warned Pinto that any such incident toward a co-worker or employee in the future that is reported and confirmed would lead to termination (Doc. 32 ¶ 48(c)(4)); 4) on August 18, 2009, Maya placed a note in Pinto's personnel file documenting that she had met with him that day to discuss an incident with a female employee in which he had made inappropriate comments regarding her request for a schedule change due to church meetings, comments which Maya

told him could lead to a law suit (Doc. 32 ¶ 48(c)(5)-(6)); 5) at the time it took place, Benavides was aware of the August 18, 2009, meeting and underlying event (Doc. 32 ¶ 48(c)(8)); 6) Pinto had documented incidents of negative behavior when he worked for Defendant in Massachusetts prior to relocating to the Gouldsboro facility (Doc. 32 ¶ 48(c)(10)-(15)); 7) Maya described her experience with Pinto as being very negative, and her observations were known to Benavides and Pavlasky (Doc. 32 ¶ 48(c)(16)-(17)); and 8) Pinto was ultimately terminated by Defendant due to his behavior and performance (Doc. 32 ¶ 48(c)(19)).

In his Counterstatement of Material Facts ("CMF"), Plaintiff adds that Benavides testified that he did not look at any documents before he recommended that Plaintiff be the Shift Manager removed. (Doc. 32 CMF ¶ 11.) Benavides' recommendation that Plaintiff be removed was made "within a little bit more than between an hour and two hours" from when he and Pavlasky learned that corporate management had approved the elimination of a shift manager position. (Doc. 32 CMF ¶ 12.) Pavlasky testified that he asked Benavides who his lowest performing shift manager was and Benavides replied that it was Plaintiff. (Doc. 32 CMF ¶ 17.) Benavides testified that before he made the recommendation to discharge Plaintiff, he had not seen Plaintiff's 360 degree feedback result summary, nor did he have it in front of him when discussing the matter with Pavlasky, nor did he have those of other shift managers

when discussing the matter with Pavlasky. (Doc. 32 CMF ¶¶ 18-19.) Benavides testified that he recommended Plaintiff for discharge because he believed he had less knowledge of systems than the other shift managers, but Benavides was unable to provide examples. (Doc. 32 CMF ¶¶ 20-21.) Benavides testified that he did not take the negative performance notes or underlying incidents regarding Pinto's behavior into consideration when he recommended Plaintiff for discharge. (Doc. 32 CMF ¶¶ 50, 58.) Pavlasky acknowledged he was aware of the allegations that Pinto had used inappropriate language before he decided to discharge Plaintiff. (Doc. 32 CMF ¶ 45.)

Defendant asserts the ages of the Shift Managers, including Plaintiff, were never discussed or considered during the decision-making process and neither Benavides nor Pavlasky knew that Plaintiff was the oldest Shift Manager in November 2009, assertions Plaintiff characterizes as self-serving and immaterial at this stage of the proceedings. (Doc. 28 ¶¶ 50-51; Doc. 32 ¶ 50-51.)

Defendant maintains the only reason Plaintiff believes Defendant discriminated against him is because it selected him for layoff. (Doc. 28 ¶ 67.) Plaintiff contends Defendant discriminated against him on the basis of age because a younger, less qualified individual was retained and because the evaluation system was inconsistently applied to the advantage of the younger Pinto. (Doc. 32 ¶ 67.)

Plaintiff is unaware that anyone at VersaCold ever made any discriminatory comments to or about him at any time during his employment. (Doc. 28 ¶ (71)(g); Doc. 32 ¶ 71(g).) During his employment with Defendant, Plaintiff never had any issues with Pavlasky or Benavides prior to being selected for layoff. (Doc. 28 ¶ (71)(h); Doc. 32 ¶ 71(h).) Plaintiff does not assert that he was treated differently because of his age prior to his selection for layoff. (Doc. 28 ¶ (71)(i); Doc. 32 ¶ 71(i).)

The Inventory Control Clerk position was not subject to the 360 evaluation process. (Doc. 28 ¶ 55; Doc. 32 ¶ 55.) Pavlasky based the layoff for that position on Inventory Control Manager Shawn Hobbs' ("Hobbs") recommendation based upon whom he considered to be the weakest performer. (Doc. 28 ¶ 56; Doc. 32 ¶ 56.) The person selected was not the oldest Inventory Control Clerk at the facility at the time of the layoff. (Doc. 28 ¶ 58; Doc. 32 ¶ 58.)

VersaCold did not replace Plaintiff following his separation from employment. (Doc. 28 ¶ 59; Doc. 32 ¶ 59.) In the Summer of 2010, Plaintiff was notified of two positions which became available at the Gouldsboro facility. (Doc. 28 ¶ 60; Doc. 32 ¶ 60.) In early July 2010, Plaintiff was invited by letter to apply for the position of Environmental Health, Safety and Security Supervisor. (Doc. 28 ¶ 61; Doc. 32 ¶ 61.) Plaintiff did not apply for the position (Doc. 28 ¶ 62), asserting he was not qualified for it (Doc. 32 ¶ 62). Based on his experience with Plaintiff as a

shift manager, Pavlasky believed one of the areas where Plaintiff was not as good as he should have been was with respect to safety issues. (Doc. 32 CMF ¶ 72.) Although he did not believe Plaintiff had all the qualifications for the safety manager position, he did not object when Plaintiff was solicited to apply for it. (Doc. 32 CMF ¶ 73.)

In August 2010, Plaintiff was offered a Shift Manager position on the second shift, the position he held before the layoff, when one of the three shift managers took another position within the Company. (Doc. 28 ¶¶ 63-64.) Plaintiff rejected this offer. (Doc. 28 ¶ 65.) Plaintiff asserts he rejected the offer because it was not given in good faith. (Doc. 32 ¶ 65.) He was given only four days to consider the offer while his attorney was on vacation. (Doc. 32 CMF ¶ 75.) Plaintiff also asserts Defendant made the offer several days after learning Plaintiff had become re-employed by the Lowe's Distribution Center. (Doc. 32 CMF ¶ 75.) Plaintiff was fifty-nine years old at the time VersaCold made these offers. (Doc. 28 ¶ 66; Doc. 32 ¶ 66.)

Based on his termination, Plaintiff filed a two-count Complaint in this Court on July 25, 2011. (Doc. 1.) With Count I Plaintiff claims a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a) and 29 U.S.C. § 215. (Doc. 1 at 6.) With Count II Plaintiff claims a violation of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955(a), based

on Discrimination on Account of Age.  (Doc. 1 at 8.)  The instant motion seeks summary judgment in Defendants' favor on both claims. (Doc. 27.)

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248).  In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party.  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 330 (1986) (citations omitted).  The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Id.* at 325.  The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  *Id.* at 324.

Where underlying facts are in dispute, the facts are viewed in the light most favorable to the plaintiff.  *Abramson v. William Patterson College of N.J.*, 260 F.3d 265, 267 (3d Cir. 2001) (citing *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 854 N.1 (3d Cir. 1990).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence."  *Anderson*, 477 U.S. at 255.  Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

**B. Defendant's Motion**

Defendant asserts that Plaintiff's age discrimination claims brought under the ADEA and the PHRA fail as a matter of law.  (Doc. 29.)  For the reasons discussed below, the Court disagrees.

13

Essentially the same analysis applies to age discrimination claims brought under the ADEA and PHRA. *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 509 n.2 (3d Cir. 2004). The ADEA makes it unlawful for an employer to discriminate against any individual in hiring, termination, compensation, or conditions of employment on the basis of the individual's age. 29 U.S.C. § 623(a)(1). Where the plaintiff lacks direct evidence of discrimination, an ADEA claim is evaluated under the burden-shifting framework for Title VII cases outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009). This framework places the initial burden on the plaintiff to establish a prima face case of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* To prevail, the plaintiff must prove, by a preponderance of the evidence, that the defendant's legitimate reason was in fact pretext of discrimination. *Id.*

At issue here is the third step of the burden-shifting framework. "In order to succeed here, [the plaintiff must] 'present evidence contradicting the core facts put forward by the employer as the legitimate reasons for its decision.'" *Mindock v. Weir Minerals North America*, No. 11-4416, 2012 WL 4903012, at *3

(3d Cir. Oct. 17, 2012) (not precedential) (quoting *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 n.6 (3d Cir. 1984)).

> Merely questioning the wisdom of an employer's decision is not tantamount to impeaching its legitimacy. For legitimacy to be called into question, the plaintiff must do more than argue the employer was "wrong or mistaken;" rather, he "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.' "

*Baker v. United Defense Industries, Inc.*, 403 F. App'x 751, 756 (3d Cir. 2010) (not precedential) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted)).

In *Gross v. FBL Financial Services*, *Inc.*, 557 U.S. 167 (2009), the Court considered whether the ADEA allowed a mixed motive claim (where a plaintiff claims that she was treated adversely because of both permissible and impermissible reasons) and concluded the statutory text of the ADEA does not authorize mixed motives age discrimination claims.  557 U.S. at 171, 175.  Thus, to establish a disparate treatment claim under the ADEA, a plaintiff must prove that age was the "but-for" cause of the employer's adverse action. *Id.* at 176.  As stated by the Third Circuit Court of Appeals, *Gross* construed the ADEA's statutory language "as requiring the plaintiff to prove but-for causation from the outset of an ADEA case." *Smith*, 589 F.3d at 690 (citing *Gross*, 557 U.S. at 177-78).

Defendant argues that it is entitled to summary judgment because it selected Plaintiff for layoff based on a legitimate non-discriminatory reason--the fact that he had the lowest score in the 2008 annual performance evaluation. (Doc. 29 at 12.) Plaintiff responds that this reason is a pretext for discrimination for several reasons, including the following: 1) Defendant's reasons for terminating Plaintiff have shifted over time; 2) Benavides testified that he did not review the evaluation feedback summaries before he recommended Plaintiff for layoff to Pavlasky but Pavlasky says he relied upon the evaluation summaries; 3) Defendant did not follow its own standards in completing/utilizing the evaluation process; 4) Defendant did not apply its employee harassment policies to Pinto; 5) Benavides rationale for his recommendation--he believed Plaintiff had "less knowledge of systems" than other shift managers--was entirely subjective and he could not provide examples of inferior knowledge; 6) Pavlasky denied knowing anything Pinto did that could put his job in jeopardy although Maya, the HR manager, testified that she documented Pinto's file on multiple occasions that his continuing conduct would lead to his termination and her observations about Pinto were known to Benavides and Pavlasky; 7) it is implausible that Defendant did not consider Pinto's documented negative conduct when deciding whom to select for layoff; and 8) the substantial difference in age between Pinto and Plaintiff (27 years) may be circumstantial evidence of age

discrimination.  (Doc. 33 at 16-21.)

Although this case presents a close call, we conclude
Plaintiff has produced sufficient evidence to survive summary
judgment.  We are mindful of the facts that Pavlasky approved of
Plaintiff's hiring and promoted him to shift manager.  (Doc. 28 ¶¶
10, 11; Doc. 32 ¶¶ 10, 11.)  We have also taken into consideration
post-layoff job opportunities which Defendant extended to
Plaintiff, *see supra* p. 11, the lack of allegations of age-related
conduct by Defendant prior to the layoff decision, and indications
in the record that all Shift Managers did not have equal skill sets
(*see*, *e.g.*, Doc. 32-3 at 22 (Pavlasky Dep. 83:1-16)).  However,
focusing on Defendant's assertion that Pavlasky was the lone
decision-maker and he based his decision only on the 2008
evaluation scores, (*see*, *e.g.*, Doc. 36 at 16, 17), we find
persuasive Plaintiff's argument and evidence calling into question
Pavlasky's asserted reliance solely on the evaluation process raw
scores.

As noted above, Defendant contends that Pavlasky, who made the
ultimate decision, relied *solely* on the scores of the three shift
managers who were evaluated in 2008.  Plaintiff casts doubt on this
claimed reliance, noting problems with the system itself and
highlighting the fact that there were known problems with the
conduct of another Shift Manager, David Pinto.  (Doc. 33 at 16-23.)
Pavlasky testified that the evaluation system, which was new in

2008, did not record all input, specifically the input he had provided--comments on Plaintiff's 2008 "final 360." (Doc. 32-3 at 13 (Pavlasky Dep. 48:17-24).) Pavlasky also testified that he had seen the results of the evaluation process before he decided to base his decision on its results. (Doc. 32-3 at 13, 15, 16 (Pavlasky Dep. 48:17-24, 54:6-55:22, 57:8-14).) Prior to this decision, no evidence suggests that it was Defendant's corporate or facility policy to base layoff decisions solely on the results of annual evaluations. Thus, Defendant's argument that no evidence of pretext exists because it relied on objective criteria (*see*, *e.g.*, Doc. 36 at 6, 19) ignores the fact that Pavlasky's decision to use this tool was subjective. In other words, the selection of what criteria to use was subjective, and the choice was made by someone who arguably knew the results of the evaluation process when he selected the criteria (*see*, *e.g.*, Doc. 32-3 at 15 (Pavlasky Dep. 54:6-21, 55:19-22)). Thus, it could be argued that the selected criteria contained a pre-ordained outcome.

While the subjectivity of the criteria is not evidence of age discrimination, it does demonstrate weakness and inconsistency in Defendant's assertion that it relied on objective criteria in making the decision to select Plaintiff for layoff and its decision is therefore beyond reproach. *See Fuentes*, 32 F.3d at 765. Similarly, the decision-maker's choosing to ignore the documented performance/conduct problems of a Shift Manager not selected for

layoff is also the type of evidence that demonstrates implausibility in Defendant's proffered reason, particularly with the claimed objectivity of the chosen criteria undermined. *Id.* HR Director Maya's testimony regarding Pavlasky's awareness of Pinto's difficulties bolsters this conclusion. (*See*, *e.g.*, Doc. 32-8 at 5-6, 9 (Maya Dep. 16:23-17:24, 32:16-21).)

We disagree with Defendant that this is a situation where Plaintiff is asking the Court to substitute its business judgment for Pavlasky's. (*See* Doc. 36 at 19.) While it may be that Pavlasky employed flawed reasoning in fulfilling his goal of "keep[ing] the decision as 'objective' as possible" (Doc. 28 ¶ 43) or he was not aware of limitations associated with his decision to rely solely upon the Overall Performance Rating score to the exclusion of other personnel data,[6] our decision is not based on such considerations. In other words, the Court's determination that summary judgment is properly denied is not based on questions regarding the wisdom of Defendant's decision. Rather, this is a situation where the decision-maker's rationale for choosing the criteria used and Defendant's arguments in support of that choice are such that a "reasonable factfinder *could* rationally find them unworthy of credence and hence infer that the employer did not act

---

[6] Interestingly, Pavlasky's chosen criteria guaranteed that the newest Shift Manager, Robert Krawiec, would not be selected for layoff because he was not employed as a Shift Manager at the time the evaluations were completed. (Doc. 28 at 10 n.18.)

for the asserted non-discriminatory reason." *Fuentes*, 32 F.3d at 765 (internal citations and quotations omitted). In sum, because credibility is at issue, summary judgment is not appropriate.

### III. Conclusion

For the reasons discussed above, we conclude that Defendant's Motion for Summary Judgment (Doc. 27) is properly denied. An appropriate Order follows.


 S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: January 18, 2013

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD SKRZYSOWKSI,                    :
                                       :CIVIL ACTION NO. 3:11-CV-1384
        Plaintiff,                     :
                                       :(JUDGE RICHARD P. CONABOY)
        v.                             :
                                       :
VERSACOLD LOGISTICS SERVICES,          :
INC., VERSACOLD LOGISTICS             :
SERVICES, LLC AND AMERICOLD            :
LOGISTICS, LLC t/d/b/a AMERICOLD       :
REALTY TRUST,                          :
                                       :
        Defendants.                    :
                                       :

_____

**ORDER**

AND NOW, THIS 18th DAY OF JANUARY 2013, FOR THE REASONS

DISCUSSED IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED

THAT:

1.    Defendant's Motion for Summary Judgment (Doc. 27) is

      DENIED;

2.    This case goes forward in its entirety.



                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge

21